# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELAINE DENNIS and COURTNEY WHITE, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOD DEAL CHARLIE, INC., et al.,<br><br>Defendants. | Case No.: 21-cv-01760-BEN-JLB<br><br>**ORDER GRANTING PLAINTIFFS' MOTION TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER**<br><br>**[ECF No. 1]** |

Before the Court is a Motion to Quash Subpoena *Duces Tecum* to Non-Party Investigator Wolfram Worms and for a Protective Order (the "Motion") filed by Plaintiffs Elaine Dennis and Courtney White ("Plaintiffs"). (ECF No. 1.) Plaintiffs seek to quash a Federal Rule of Civil Procedure 45 subpoena served on their non-party investigator Wolfram Worms by Defendant Good Deal Charlie, Inc. ("Defendant") in the underlying action pending in the Northern District of Oklahoma, *Dennis, et al. v. Good Deal Charlie, Inc., et al.*, Case No. 20-cv-00295-GKF-JFJ (N.D. Okla. 2020). (*Id.*) Plaintiffs also request a protective order pursuant to Federal Rule of Civil Procedure 26. (*Id.*)

For the following reasons, the Court **GRANTS** Plaintiffs' Motion to Quash the Subpoena and for a Protective Order (ECF No. 1).

in the Amended Complaint." (ECF No. 6-1 at 69.)  On September 23, 2021, Magistrate Judge Jodi F. Jayne granted Defendant's motion to compel. (*Id.* at 70–71.)  Following Judge Jayne's order, Plaintiffs' counsel stated in an email to Defendant on October 11, 2021, "that the only source of information for the Amended Complaint was Robert Hettick, whom" Defendant deposed on October 1, 2021. (ECF No. 6-1 at 87.)

**B. Subpoena to Mr. Worms**

On September 27, 2021, Defendant properly served an amended non-party subpoena *duces tecum* (the "Subpoena") on Mr. Worms seeking information related to his investigation in this case.[1] (ECF No. 1-4 at 2, 5.)  The Subpoena requested the following:

1. All investigative materials or reports concerning, regarding or related to the Defendants, individually or collectively. This includes, but is not limited to, all expense, compensation, and travel records.

2. All investigative materials or reports concerning, regarding or related to any mattress allegedly sold by the Defendants, individually or collectively.

3. All investigative materials or reports delivered, issued, given or sold to Plaintiffs' Attorneys concerning, regarding or related to the Defendants, individually or collectively.

4. All investigative materials or reports delivered, issued, given or sold to any third persons concerning, regarding or related to the Defendants, individually or collectively.

5. All communications with Dennis of any information or knowledge concerning, regarding or related to the Defendants, individually or collectively, or any mattress allegedly sold by the Defendants, individually or collectively.

6. All communications with White of any information or knowledge concerning, regarding or related to the Defendants, individually or

---

[1] It appears Defendant's original subpoena was provided to Mr. Worms on September 22, 2021. (*See* ECF No. 1-4 at 5.)  The Subpoena served on September 27, 2021, was "amended to reflect a change in place of production but [was], in all other aspects, identical" to the original subpoena. (*Id.*)

collectively, or any mattress allegedly sold by the Defendants, individually or collectively.

7. All communications with Plaintiffs' Attorneys of any information or knowledge concerning, regarding or related to the Defendants, individually or collectively, or any mattress allegedly sold by the Defendants, individually or collectively.

8. All communications with any other persons of any information or knowledge concerning, regarding or related to the Defendants, individually or collectively, or any mattress allegedly sold by the Defendants, individually or collectively.

9. The identity of all persons with whom you had a communication of any information or knowledge concerning, regarding or related to the Defendants, individually or collectively, or any mattress allegedly sold by the Defendants, individually or collectively.

10. All communications with Defendants, individually or collectively, including any of Defendants' past or present employees or agents.

11. All investigative materials or reports delivered, issued, given or sold to any third persons concerning, regarding or related to the sale of "scratch and dent" bedding.

12. All investigative materials or reports delivered, issued, given or sold to any Plaintiffs' Attorneys concerning, regarding or related to the sale of "scratch and dent" bedding.

13. All investigative materials or reports delivered, issued, given or sold to any third persons concerning, regarding or related to the sale of secondary bedding.

14. All investigative materials or reports delivered, issued, given or sold to Plaintiffs' Attorneys concerning, regarding or related to the sale of secondary bedding.

15. All documents depicting any original material prepared by, or prepared for, Overstock. This includes, but is not limited to: bills of lading; receipts; invoices; account statements; customer information; and complaints, including resolutions or potential resolutions.

16. All documents provided – directly or indirectly – by any Overstock employee either past or present.

17. All correspondence with, by, or between Overstock customers. This includes any memoranda or affidavits relating thereto.

18. All documents relating to any governmental body's oversight or regulation of Overstock – whether state, federal, county, tribal, or otherwise. This includes all correspondences, referrals, and complaints pertaining thereto.

(*Id.* at 15–16.)

On October 12, 2021, Plaintiffs filed the instant Motion, arguing that Defendant's Subpoena seeks non-discoverable attorney work product. (ECF No. 1.) On November 12, 2021, Defendant filed an opposition (ECF No. 6), and Plaintiffs filed a reply on November 19, 2021 (ECF No. 7). On January 5, 2022, a telephonic hearing regarding the Motion was held before Magistrate Judge Jill L. Burkhardt. (ECF No. 12.)

## II.     LEGAL STANDARD

Federal Rules of Civil Procedure 26 and 45 govern discovery from non-parties by subpoena. *See Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994) (applying both rules to motion to quash subpoena). As to discovery from third parties, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . ." Fed. R. Civ. P. 26(b)(1). But a party cannot access information "prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). A subpoena seeking such information must be quashed or modified if it "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii).

## III.    DISCUSSION

### A. Attorney Work Product

"The work-product doctrine protects from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *United States v.*

*Richey*, 632 F.3d 559, 567 (9th Cir. 2011) (internal quotation marks and citation omitted); Fed. R. Civ. P. 26(b)(3).  To qualify for protection against discovery under the work-product doctrine, documents must have two characteristics: (1) they must be "prepared in anticipation of litigation or for trial"; and (2) they must be prepared "by or for another party or its representative."  Fed. R. Civ. P. 26(b)(3); *see also In re Grand Jury Subpoena*, 357 F.3d 900, 907 (9th Cir. 2003).  Federal Rule of Civil Procedure 26(b)(3) distinguishes between ordinary work product and opinion work product.  Ordinary work product is discoverable if the requesting party "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."  Fed. R. Civ. P. 26(b)(3)(A)(ii).  However, as to opinion work product, courts are obligated to "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."  Fed. R. Civ. P. 26(b)(3)(B).  "A party seeking opinion work product must make a showing beyond the substantial need/undue hardship test required under Rule 26(b)(3) for non-opinion work product."  *Holmgren v. State Farm Mutual Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992) (agreeing with other courts "that have concluded that opinion work product may be discovered and admitted when mental impressions are *at issue* in a case and the need for the material is compelling" (emphasis in original)).  Notably, the identity of witnesses interviewed can be opinion work product, in that it can reveal "which witnesses counsel considers important, revealing mental impressions and trial strategy." *Local 703, I.B. of T. Grocery and Food Employees Welfare Fund, et al. v. Regions Financial Corp. et al.*, No. 12cv1561 H (NLS), 2012 WL 13027572, at *2 (S.D. Cal. Sept. 11, 2012) (citations omitted).

      The "anticipation of litigation" test requires "more than a remote possibility of litigation."  *Natural-Immunogenics Corp. v. Newport Trial Group, et al.*, No. SACV 15–02034 JVS (JCGx), 2019 WL 11743217, at *4 (C.D. Cal. Mar. 1, 2019) (citations omitted); *see also Arfa v. Zionist Org. of Am.*, No. CV 13–2942 ABC (SS), 2014 WL 815496, at *4 (C.D. Cal. Mar. 3, 2014) ("The work product rule does not apply merely because there is a

remote prospect of future litigation."); *Health v. F/V ZOLOTOI*, 221 F.R.D. 545, 549 (W.D. Wash. 2004) ("More than the mere possibility of litigation must be evident for materials to be considered immune from discovery under the work-product doctrine." (citation and internal quotations omitted)); *Fox v. Cal. Sierra Fin. Servs.*, 120 F.R.D. 520, 524 (N.D. Cal. 1988) ("There is no requirement that the litigation have already commenced in order for the work-product doctrine to be operative, however, there must be more than a remote possibility of litigation.").

Plaintiffs argue the information sought in Defendant's Subpoena is protected as work product. (ECF No. 1-2 at 6, 8–13.) Plaintiffs' counsel hired Mr. Worms to investigate—at the direction of counsel—information supporting Mr. Hettick's allegations that Defendant was selling "used, unlabeled[,] and unsanitized" mattresses to consumers as new. (ECF Nos. 6-1 at 96; 7 at 3; 7-1 at 2 ¶ 3.) Defendant argues that the work product doctrine is inapplicable because Plaintiffs' counsel, Mr. Evangelista, had not engaged a client at the time he hired Mr. Worms as an investigator, and that therefore, Mr. Worms's findings were not made in "anticipation of litigation." (ECF No. 6 at 9–12.)

As an initial matter, the Court finds that, for purposes of analyzing the applicability of the work-product privilege, an attorney-client relationship existed between Mr. Evangelista and Mr. Hettick when Mr. Evangelista directed Mr. Worms to conduct the investigation. "An attorney-client relationship is formed when an attorney renders advice directly to a client who has consulted him seeking legal counsel." *Ultimate Fitness Center, LLC v. Wilson*, No. 16-CV-418 JLS (JMA), 2016 WL 6834001, at *3 (S.D. Cal. Nov. 21, 2016) (citing *Waggoner v. Snow, Becker, Kroll, Klaris & Krauss*, 991 F.2d 1501, 1505 (9th Cir. 1993)). "A formal contract is not necessary to show that an attorney-client relationship has been formed." *Id.* (citing *Bernstein v. State Bar*, 50 Cal. 3d 221, 229–30 (1990)). "The court may look to the intent and conduct of the parties to determine whether the relationship was actually formed." *Id.* (citing *Hecth v. Super. Ct.*, 192 Cal. App. 3d 560, 565 (1987)). Here, Mr. Hettick stated in both his Declaration to Plaintiffs' Reply and his deposition conducted by Defendant on October 1, 2021, that he sought legal advice from Mr.

Evangelista beginning in July 2019 regarding the allegations at issue in the underlying litigation. (*See* ECF Nos. 6-1 at 96; 7-3 at 2 ¶ 2.) Further, Mr. Hettick stated in his deposition that Mr. Evangelista told him that "he would look into what [Mr. Hettick] was asking him for" regarding Defendant's sale of used mattresses. (ECF No. 6-1 at 96.) Plaintiffs concede there was no formal attorney-client contract between Mr. Hettick and Mr. Evangelista until 2021 (*see* ECF Nos. 7 at 2; 7-1 at 2 ¶ 2), however, the Court nonetheless finds that an implied attorney-client relationship formed after Mr. Evangelista agreed to investigate Mr. Hettick's allegations against Defendant in July 2019.

Although it is true that Mr. Evangelista had not formed an attorney-client relationship with either of the named Plaintiffs until 2020, the Court is not persuaded by Defendant's argument that Mr. Worms's investigation was not conducted in anticipation of litigation. The record evidence indicates Mr. Evangelista had not engaged Mr. Worms as his investigator until August or September 2019 (*see* ECF Nos. 6 at 5; 7-1 at 2 ¶ 2; 7-2 at 2 ¶ 3), which was after Mr. Hettick sought his advice. Thus, the Court concludes that Mr. Worms conducted his investigation in anticipation of litigation.

Defendant's Subpoena essentially requests all investigative materials and communications from Mr. Worms's investigation on behalf of Plaintiffs, even communications Mr. Worms had with Plaintiffs' counsel. Further, if Plaintiffs had to turn over the names of witnesses not mentioned or relied on in the Amended Complaint, Defendant "could easily determine Plaintiffs' investigation and figure out which witnesses Plaintiffs thought important and credible, and which they did not. Such information is classic work product and not discoverable." *See Local 703*, 2012 WL 13027572, at *4.

Defendant's only argument that the subpoenaed material does not constitute work product stems from the factually erroneous position that Mr. Evangelista had not retained Mr. Worms's investigative services in anticipation of litigation. Therefore, the Court finds that the information sought in Defendant's Subpoena qualifies as work product.

///

///

### B. Substantial Need and Undue Hardship

As Plaintiffs have met their burden of showing the subpoenaed material constitutes attorney work product, the burden now shifts to Defendant to establish that an exception to the ordinary protection afforded to work product applies. Specifically, Defendant must show that it has "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii).[2]

Defendant argues that "disclosure of the identity, and quantity, of these individuals [interviewed by Worms] is necessary to determine the potential class size and whether these collective individuals satisfy the class action requirements under [Fed. R. Civ. P.] 23(a)(1)-(4)." (ECF No. 6 at 14.) Defendant asserts that "Plaintiffs failed, or otherwise refused to reveal, any information indicative of the identities of witnesses." (*Id.*) Defendant also argues it "will certainly suffer undue hardship if ordered to obtain the substantial equivalent of the subpoenaed information by alternative means" because "at this stage of the proceedings, there are no alternative means of obtaining the subpoenaed documents and things." (*Id.* at 15.) Plaintiffs argue that there is no substantial need as "Defendant has acknowledged that Mr. Hettick was the sole source of information for the Amended Complaint (other than the two plaintiffs), that all of the evidentiary materials provided to Plaintiffs' counsel have been produced to Defendant[], and that Mr. Hettick has been deposed." (ECF No. 7 at 5.)

The Court agrees with Plaintiffs. Plaintiffs have repeatedly notified Defendant, in discovery responses and pleadings, and confirmed for the Court at the hearing in this

---

[2]   This is the standard for obtaining ordinary work product; the standard for opinion work product is higher. Defendant's Subpoena would seem to call for both ordinary work product and opinion work product. Because Defendant has not met the standard to obtain ordinary work product, the Court does not parse between ordinary work product and opinion work product.

matter, that the only witnesses Mr. Worms interviewed about Oklahoma activities[3] by the Defendant were the named Plaintiffs—Dennis and White—and Mr. Hettick. Nothing has been presented to the Court which calls the veracity of this representation into question. Ultimately, Defendant shows no "substantial need for the particular information sought, beyond [its need to] reduc[e] [its] investigative costs by riding on Plaintiffs' coattails[.]" *Local 703*, 2012 WL 13027572, at *4 (quoting *Gen-Probe v. Becton, Dickinson & Co.*, No. 09cv2319 BEN (NLS), 2011 U.S. Dist. LEXIS 27961, at *9 (S.D. Cal. 2011)). Thus, Defendant has not met its burden of showing that the work product protection should be invaded.

### C. Protective Order

A protective order is a remedy that is available to "any person" who is able to establish good cause for issuance of the protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c)(1). Because the requested documents and materials created by Mr. Worms as part of his investigation would constitute work product, good cause exists to issue the Protective Order.

### D. Request for Sanctions

The Court construes Plaintiffs' request that they be awarded "costs and attorneys' fees related to their filing and serving of this Motion," as a request for sanctions pursuant to Federal Rule of Civil Procedure 45. (ECF Nos. 1-2 at 13 n.6; 7 at 5.) Rule 45 states that a party or attorney responsible for issuing and serving a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to a subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." Fed. R. Civ. P. 45(d)(1); *see also Mount Hope*

---

[3] The putative class is limited to "persons and entities that have purchased used mattresses from Overstock in the state of Oklahoma." (ECF No. 1-4 at 40 ¶ 49.)

*Church v. Bash Back!*, 705 F.3d 418 (9th Cir. 2012); *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 161 F.R.D. 86 (N.D. Cal. 1995).

Since the 2013 amendments, which moved and modified the provisions formerly in subdivision (c) to subdivision (d),[4] "the district where compliance is required" has been defined as the location of the subpoenaed person or entity, in keeping with Rule 45's purpose of protecting local non-parties and resolving disputes locally. *See generally Raap v. Brier & Thorn, Inc.*, No. 17-MC-3001, 2017 WL 2462823 (C.D. Ill. July 7, 2017); *see also XTO Energy, Inc. v ATD, LLC*, No. 14-1021 JB/SCY, 2016 WL 1730171, at *20 (D.N.M. Apr. 1, 2016); *Agincourt Gaming, LLC v Zynga, Inc.*, No. 14-CV-0708-RFB-NJK, 2014 WL 4079555, at *4 (D. Nev. Aug. 15, 2014). Thus, this Court must enforce the duty to avoid imposing an undue burden and impose sanctions if appropriate.

"Because [Rule 45(d)(1)] gives 'specific application' to Rule 26(g), it follows that a violation of any one of the Rule 26 duties will be relevant to assessing the propriety of sanctions under [Rule 45(d)(1)]'s 'undue burden' language. This approach is consistent with the interpretation of other courts." *Mount Hope Church*, 705 F.3d at 425 (internal citation omitted). Federal Rule of Civil Procedure 26(g) provides:

> Every disclosure under Rule 26(a)(1) or (a)(3) and every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name—or by the party personally, if unrepresented . . . By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry . . . with respect to a discovery request, response, or objection, it is:
>
> (i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;

---

[4] In contrast to the current version of subdivision (d), subdivision (c)(1) provided that "the issuing court must enforce" the duty to avoid imposing undue burden rather than "the court for the district where compliance is required."

   (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and

   (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

Fed. R. Civ. P. 26(g).

  "Per the terms of Rule 26(g)(3), violation of any one of these duties without substantial justification results in sanctions." *Mount Hope Church*, 705 F.3d at 425. Courts have found "that the mere fact that a subpoena was ultimately quashed does not, standing alone, require the imposition of sanctions" (*see Black v. Wrigley*, No. 18-CV-2367 GPC-BGS, 2019 WL 1877070, at *7 (S.D. Cal. Apr. 26, 2019), citing *Alberts v. HCA Inc.*, 405 B.R. 498, 502–03 (D.D.C. 2009); *Scherer v. GE Capital Corp.*, 185 F.R.D. 351, 352 (D. Kan. 1999)), but "[a] court may . . . impose sanctions when a party issues a subpoena in bad faith, for an improper purpose, or in a manner inconsistent with existing law." *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013) (citing *Mount Hope Church*, 705 F.3d at 425, 428; *Mattel Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 814 (9th Cir. 2003)).

  Reviewing the record, it does not appear the Subpoena served on Mr. Worms was facially defective. (*See* ECF No. 1-4 at 2, 5.) Further, Plaintiffs have not demonstrated undue burden or that Defendant served its Subpoena on Mr. Worms based on a frivolous argument or for an improper purpose. *See Mount Hope Church*, 705 F.3d at 429 ("Absent undue burden imposed by an oppressive subpoena, a facially defective subpoena, or bad faith on the part of the requesting party, [Rule 45 (d)(1)] sanctions are inappropriate.") Therefore, the Court finds that Rule 45 sanctions are not warranted.

///
///
///
///

## IV.   CONCLUSION

For good cause shown, the Court **GRANTS** Plaintiffs' Motion to Quash the Subpoena and for a Protective Order (ECF No. 1).

**IT IS SO ORDERED.**

Dated: January 6, 2022

*/s/ Jill Burkhardt*
Hon. Jill L. Burkhardt
United States Magistrate Judge